**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-30572**

_____

**RONALD C. BOURG; ET AL.,**

Plaintiffs,

**L & L SANDBLASTING, INC.,**

Intervenor Plaintiff -
Third Party Defendant - Appellee,

**VERSUS**

**CONTINENTAL OIL COMPANY, also known as Conoco, Inc.; ET AL.,**

Defendants,

**CNG PRODUCING COMPANY, also known as Consolidated Natural Gas Company,**

Defendant - Third Party
Plaintiff - Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-3192-D)

_____

August 13, 1999

Before SMITH, DeMOSS, and STEWART, Circuit Judges

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In this appeal we are asked to decide whether the district court properly granted summary judgment to third-party defendant-appellee, L & L Sandblasting ("L & L"), against the impleader claim asserted by third-party plaintiff-appellant, CNG Producing Company ("CNG").  For the reasons that follow, we dismiss the instant appeal as untimely.

I.

Transcontinental Gas Pipe Line Corporation ("Transco") owns and operates pipeline metering equipment.  In May, 1994, Transco contracted with L & L to sandblast and paint metering equipment located on offshore platforms in the Gulf of Mexico.  To facilitate that operation, Transco chartered the M/V MISS JANE, a supply vessel owned by LaSalle Marine ("LaSalle"), to ferry L & L workers to the various platforms.

Ronald Bourg ("Bourg") was employed by L & L as a sandblaster and painter.  On October 6, 1994, Bourg was injured when he fell through deteriorated grating on the dolphin deck of Fixed Platform 246-A, which was owned and operated by CNG.  At the time of his injury, Bourg was attempting to tie the M/V MISS JANE to the platform, which was located on the Outer Continental Shelf.

Bourg filed suit against CNG and others in federal district court in the Eastern District of Louisiana.  CNG then demanded indemnification from Bourg's employer, L & L, in accordance with an indemnification provision contained in an Offshore Master Service Contract it had executed with L & L on March 17, 1993.  When L & L

2

refused, CNG filed a third-party breach of contract claim against L & L. L & L then moved for summary judgment on CNG's claim, which the district court granted on February 24, 1997.[2]

On the eve of trial, the remaining parties reached a settlement agreement. As a result, the district court entered an order dismissing the action on October 27, 1997. On April 29, 1998, those same parties filed a joint motion to dismiss their claims. The district court signed the motion on May 2, 1998, and the clerk entered the order on May 4, 1998. On May 21, 1998, CNG filed the instant appeal, challenging the district court's order of February 27, 1997, granting L & L's motion for summary judgment.[3]

## II.

The first issue we address is whether we have jurisdiction over this appeal. L & L contends that jurisdiction is lacking because CNG's appeal was not timely filed. L & L points to the fact that CNG did not file its notice of appeal until May 21, 1998, well after the district court's order of October 27, 1997, dismissing the action. CNG, however, argues that the appeal was in time because the filing period did not begin to run until May 4, 1998, the date the district court signed the parties' joint motion to dismiss. To resolve this issue, we first must determine the

---

[2] The district court's ruling was based on the finding that Louisiana law governed CNG's demand, and that the indemnity obligation was therefore precluded by the Louisiana Oilfield Indemnity Act of 1981, La. Rev. Stat. § 9:2780.

[3] CNG also appealed the district court's May 27, 1997 order denying CNG's motion for a new trial.

3

legal effect of the district court's October 27 order. Specifically, we must decide whether the order amounted to a final judgment, and whether it was properly entered in accordance with the Federal Rules of Civil Procedure. If so, CNG's appeal is too late.

A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978). We follow a practical, rather than technical, approach to determining whether a district court decision meets this standard. "A judgment reflecting an intent to dispose of all issues before the court is final." *Moreau v. Harris County*, 158 F.3d 241, 244 (5th Cir. 1998).

In this case, the parties entered a settlement agreement on October 26, 1997, which resolved all remaining issues in the case. Accordingly, at that point in time the litigation had ended, the rights of the parties were no longer in dispute, and the district court was left with nothing more to do but dismiss the case. After being notified of the settlement, the district court entered its order of October 27, entitled "Order of Dismissal." In a short, perfunctory order, the district court noted that the case had settled, and dismissed the action. On these facts we are inclined to believe that the district court entered its order of dismissal intending to put a final end to the litigation.

CNG, however, argues that the order was not final because the district court's dismissal was conditional in nature. CNG points

4

to the fact that in the order the district court retained jurisdiction over the settlement "for enforcement purposes," and granted the parties 60 days to enforce the agreement if so needed. CNG's argument misses the mark.

The district court's dismissal of this suit was not conditional. It is true, as CNG alleges, that the district court dismissed this suit while simultaneously retaining jurisdiction over the settlement. But the district court in no way conditioned its dismissal on the parties' performance under the settlement agreement. The district court's order allowed the parties to enforce the settlement for 60 days, if needed, but it did not allow the parties to relitigate the merits of the underlying action.[4]

Additionally, even if the district court's dismissal was conditional, that condition was intended to last for only 60 days. Thus, on December 26, 1997, when those 60 days were up, the district court's order ripened into an appealable final judgment, and the time to file a notice of appeal began to run. Because CNG did not file the instant appeal until May 21, 1998, it is untimely

---

[4]    CNG's argument overlooks the fact that a district court may render final judgment on the merits, and yet retain jurisdiction over the settlement agreement. This is so because a final judgment on the merits is independent from the rights a party may later assert pursuant to a settlement agreement. A final judgment is the formal and legal end to litigation on the merits. A settlement agreement, on the other hand, creates new contractual rights that are distinct from the rights asserted in the earlier litigation. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) (recognizing that a suit to enforce a settlement agreement is distinct from the original litigation, and thus usually requires its own basis of jurisdiction). Thus, the mere fact that the district court retained jurisdiction over the settlement does not make its order any less final.

5

even under CNG's proffered rationale.  *See* Fed. R. App. P. 4.  For these reasons we conclude that the district court's order of October 27 was a final judgment.  We turn next to the question of whether the order was properly entered in the record.

Rule 58 provides that "[e]very judgment shall be set forth on a separate document."  Fed. R. Civ. P. 58.  It further provides that "[a]ttorneys shall not submit forms of judgment except upon direction of the court, and these directions shall not be given as a matter of course."  *Id.*  In this case, the district court's October 27 order is set forth on its own separate document.  Moreover, it was not a form of judgment submitted by the attorneys and merely signed by the district judge.  Although the October 27 "Order of Dismissal" is not entitled "final judgment," the label is unimportant.

> If the language used by the court clearly evidences the judge's intention that it shall be his final act it constitutes a final judgment, and when such intention has been so evidenced and the docket entry has been made a final judgment has been pronounced and entered and the time to appeal starts to run.

*Erstling v. Southern Bell Tel. & Telegraph Co.*, 255 F.2d 93, 95 (5th Cir. 1958).[5]

---

[5]    We are aware that in *Banker's Trust Co. v. Mallis*, 435 U.S. 381, 387-88 (1978), the Supreme Court held that the Second Circuit properly assumed jurisdiction of an appeal from an order of dismissal, despite the lack of a separate judgment, when (1) the order was the final decision in the case, and (2) the appellee did not object to the taking of the appeal.  We are also aware that in accordance with *Mallis*, this Circuit will, when circumstances permit, find waiver of the separate document requirement to avoid the termination of an appeal.  *See* *Hammack v. Baroid Corp.*, 142 F.3d 266 (5th Cir. 1998); *Baker v. Mercedes Benz of N. Am.*, 114 F.3d 57 (5th Cir. 1997).  *Mallis*' waiver rule is inapplicable in

6

We thus conclude that the district court's October 27 order was a final judgment properly entered in the record.  Accordingly, CNG's appeal is untimely and must be dismissed.

**DISMISSED.**

---

the present case, however, because L & L, the appellee, expressly objected to the taking of this appeal.